UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Physician Specialty Pharmacy, LLC,    Civil No. 18-cv-1044 (MJD/TNL)

        Plaintiff,

v.    **ORDER**

Prime Therapeutics, LLC,

        Defendant.

_____

    Adrienne Dresevic and Robert Dindoffer, The Health Law Partners and Elizabeth R. Odette, Lockridge Grindal Nauen PLLP, Counsel for Plaintiff.

    Christine Lindblad, Archana Nath and Erin J. Barragry, Fox Rothschild LLP, Counsel for Defendant.
_____

    The above matter comes before the Court upon the Report and Recommendation of United States Magistrate Judge Tony Leung dated August 8, 2019. Plaintiff has filed objections to the Report and Recommendation.

    Pursuant to statute, the Court has conducted a de novo review of the record. 28 U.S.C. § 636(b)(1); Local Rule 72.2(b). Based upon that review, the Court will overrule Plaintiff's objections and will adopt the Report and Recommendation in its entirety.

1

I. **Discussion**

   A. **Background**

Plaintiff Physician Specialty Pharmacy, LLC ("PSP") is a specialty pharmacy located in Florida that had a substantial number of customers in Alabama.[1] Defendant Prime Therapeutics, LLC ("Prime") is a pharmacy benefits manager ("PBM") that manages the prescription drug benefits for Blue Cross and Blue Shield of Alabama. For several years, PSP filled prescription claims for Prime's beneficiaries, but in December 2015, Prime began to conduct a series of audits concerning PSP's claims to Prime for payment. While the audits were conducted, Prime refused to pay PSP for any prescriptions it dispensed to a Prime member.

On May 16, 2016, Prime terminated PSP from its pharmacy network.

In April 2017, Prime announced the creation of AllianceRx; a joint venture with Walgreens to provide specialty and mail-order pharmacy services.

In April 2018, PSP brought this action against Prime. Counts I through XV assert claims under Minnesota and Florida law. Count XVI asserts a number of

---

[1] PSP's pharmacy license in Alabama was revoked as of February 28, 2018 by Order of the Alabama State Board of Pharmacy. (Doc. No. 86, Ex. 6.)

antitrust violations under Sections 1 and 2 of the Sherman act and Sections 3 and 7 of the Clayton Act.

By Order dated March 28, 2019, the Court adopted the Report and Recommendation of Magistrate Judge Leung and granted Prime's motion to dismiss the antitrust claim for failure to state a claim, and deferred ruling on the issue of supplemental jurisdiction over the remaining state law claims. Thereafter, PSP was given leave to file the Second Amended Complaint ("SAC"), and Prime again moves to dismiss the antitrust claim and requests the Court decline to exercise supplemental jurisdiction over the state law claims.

**B.     Report and Recommendation**

Following briefing and oral argument, the Magistrate Judge issued a Report and Recommendation again recommending the Court grant the motion to dismiss the antitrust claim and to decline to exercise supplemental jurisdiction over the remaining state law claims. The Magistrate Judge further recommended that PSP not be allowed an additional opportunity to submit an amended complaint.

## C. Objections

PSP objects to the Magistrate Judge's conclusion that its antitrust claims be dismissed with prejudice. First, PSP asserts that it properly asserted a claim under Section 7 of the Clayton Act – which prohibits mergers or acquisitions that substantially lessen competition or tend to create a monopoly - and that Prime did not move to dismiss such claim in its motion to dismiss.

The motion currently before the Court is to dismiss the SAC in its entirety. While Prime's moving memorandum did not separately identify PSP's Section 7 claim, in its opposition, PSP argued that it had properly pleaded a claim under Section 7 of the Clayton Act. In its reply brief, Prime responded that PSP's Clayton Act claims fail for the same reasons as the Sherman Act claims: PSP did not plead antitrust injury, anticompetitive harm; a relevant market; AllianceRx or Walgreens' market share; or a significant limiting of PSP's opportunities in the market. Accordingly, the Court finds the record clearly demonstrates that Prime intended to move for dismissal of all alleged antitrust violations, and that PSP was given the opportunity to support its Section 7 allegations.

The Magistrate Judge recommended the Section 7 claim be dismissed because PSP did not establish that it had standing to assert such claim.

Specifically, the Magistrate Judge found that to properly plead a Section 7 claim, PSP must plead facts to show that its alleged injury was caused by the alleged anticompetitive merger of Prime and Walgreen's pharmacy services. The Magistrate Judge determined that, based on the allegations in the SAC, the alleged injury suffered by PSP was exclusion from Prime's network based on Prime's decision as a PBM to terminate PSP – not from an alleged improper agreement between Prime and Walgreens on the pharmacy services level.

Based on its de novo review, the Court will adopt the Magistrate Judge's legal analysis of the Section 7 claim in its entirety and will overrule PSP's objection.

PSP further objects to the Magistrate Judge's application of the "rule of reason" level of scrutiny as to the vertical aspects of the Prime and Walgreens merger. PSP argues it has sufficiently pleaded a horizontal merger agreement that included an agreement to exclude PSP and other pharmacies on the market. PSP notes the timing of the announcement of the merger between Prime and Walgreens at the pharmacy services level, and the termination of PSP and other pharmacies supports its allegations of an anticompetitive agreement.

The Court finds that the Magistrate Judge correctly found that PSP had not alleged facts to show a coordinated action between Prime and Walgreens at the pharmacy services level. Instead, PSP alleged the agreement between Prime and Walgreens required Prime to leverage its "control over the buyer side of the pharmacy services market to exclude competitors and enhance their control over the seller-side of those markets." (R&R at 9, quoting SAC ¶ 20.) The Court further agrees with the Magistrate Judge's finding that this allegation clearly describes a vertical agreement, as Prime, acting as a PBM, does not operate at the same market level as a pharmacy services provider.

Accordingly, based on the applicable law, it was not error to subject PSP's antitrust claims to the rule of reason level of scrutiny.[2]

Finally, PSP objects to the Magistrate Judge's recommendation that its antitrust claims be dismissed due to the alleged failure to plead relevant markets. PSP asserts that Prime controls access to approximately one half of all patients in

---

[2] PSP further argues the question of whether the per se rule or the rule of reason applies is a question of fact, and cites to In re Wholesale Grocery Prod. Antitrust Litig., 752 F.3d 728 (8th Cir. 2014). The Court finds PSP's reliance on this case is misplaced, as the motion before the court in Wholesale Grocery was for summary judgment, and the court found that when the record contains material factual disputes as to relevant markets and injury, a jury should determine whether the evidence demonstrates a per se violation. Id. at 735. The court went on to note, however, that "the ultimate question whether per se or rule of reason analysis applies is one of law." Id. n. 7.

Alabama and 95% of commercially insured patients in Alabama, but to the extent there is any confusion, PSP should be allowed to amend its complaint to clarify the relevant markets include the overall markets for pharmacy services.

Based on its de novo review of the record, the Court finds that based on the allegations in the SAC and the attached exhibits, the Magistrate Judge correctly found that PSP defined the relevant market as relating to commercially insured patients.  (See SAC ¶ 165 "the over-arching relevant market is the "**Commercial Pharmacy Market**," which is the market for pharmacy services provided to commercially-insured patients/beneficiaries."; Ex. H.)

In Little Rock Cardiology Clinic PA v. Baptist Health, a group of cardiologists brought antitrust claims against Blue Cross Blue Shield after plaintiffs were terminated from the Blue Cross network.  591 F.3d 591, 594 (8th Cir. 2009).  In determining what the relevant market was for purposes of the antitrust claim, the Eighth Circuit held such market must be determined from the perspective of the cardiologists.  Id. at 597.  "In this case – an exclusive-dealing case involving shut-out cardiologists-the relevant inquiry is whether there are alternative patients available to the cardiologists. . . .  Patients able to pay their medical bill, regardless of the method of payment, are reasonably

interchangeable from the cardiologist's perspective from which to analyze the issue in this case." 591 F.3d 591, 597 (8th Cir. 2009).  See also Park Irmat Drug Corp. v. Express Scripts Holding Co., 911 F.3d 505, 517 (8th Cir. 2018) (plaintiff, a mail-order pharmacy, defined the relevant market too narrowly by failing to include all available consumers).

Applying Little Rock and Park Irmat to this case, the Court finds that PSP defined the relevant market too narrowly because it did not include patients under government programs such as Medicare and Medicaid.

PSP next argues that special circumstances exist in this case to allow it to define the market as including only commercially insured patients, arguing "the commercial realities facing PSP following Prime's actions made it impossible to sustain its business in Alabama without commercially insured patients."  (PSP Obj. at 7.)  The Magistrate Judge found that PSP's allegations in support of this argument are conclusory and insufficient to state a plausible cause of action – noting PSP could have easily included allegations to support the claim such as what portion of its revenue was derived from customers with commercial insurance and how the prices charged to those customers compared to non-commercially insured customers.  (R&R at 16.)

Based on its de novo review, the Court agrees with the Magistrate Judge and finds that PSP has failed to include sufficient facts which demonstrate that special circumstances have been alleged to warrant a finding that only commercially insured patients is a proper market. Accordingly, the Court will adopt, in its entirety, the Report and Recommendation.

**IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. No. 83] is **GRANTED** as follows:

    a. Counts 1 through 15 of the Second Amended Complaint are **DISMISSED WITHOUT PREJUDICE** for lack of supplemental jurisdiction; and

    b. Count 16 is **DISMISSED WITH PREJUDICE.**

2. Plaintiff's Motion in Limine to Exclude Settlement Demand Letter [Doc. No. 101] is **DENIED AS MOOT.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: September 18, 2019

s/ Michael J. Davis
Michael J. Davis
United States District Court